IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERTO SALVADOR, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 04-3908 (JBS) |
| v. | |
| DEVON BROWN, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Mr. Roberto Salvador
#401971
East Jersey State Prison
Unit 4DN, Lock Bag R
Rahway, New Jersey 07065
    Plaintiff pro se

Peter C. Harvey
Attorney General of New Jersey
    By:  Tamara L. Rudow, D.A.G.
Office of the New Jersey Attorney General
Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112

**SIMANDLE**, District Judge:

    This matter comes before the Court upon the motion of State Defendants Devon Brown, Kathryn MacFarland, Stacey Wilson, and Michelle Bertucci to dismiss Counts II and III of Plaintiff Roberto Salvador's Complaint on the grounds that prison officials cannot be held liable under a theory of respondeat superior. Alternatively, Defendants argue that summary judgment should be granted because Plaintiff did not exhaust his complete

administrative remedies prior to filing suit.  For the reasons discussed herein, Defendants' motion will be granted.

## I.  BACKGROUND

Plaintiff Roberto Salvador is an inmate currently incarcerated at East Jersey State Prison ("EJSP") in Rahway, New Jersey.  (Affidavit of Steven M. Johnson at Ex. A.)  Plaintiff was previously incarcerated at South Woods State Prison ("SWSP") in Bridgeton, New Jersey from March 27, 2000 until he was transferred to EJSP on September 9, 2004.  (Id.)  During his period of incarceration at SWSP, Plaintiff worked as a paralegal from February 27, 2002 until April 6, 2004, at which time he was reassigned to work grounds maintenance.[1]  (Id.)  Plaintiff alleges that the internal grievance procedures at SWSP resulted in dissemination of the fact of his medical condition, namely that he has contracted Hepatitis C, to unauthorized prison personnel and that his housing unit transfer and subsequent job re-assignment were effected in retaliation for his filing grievances.  (Compl. at 7d.)

SWSP has adopted, in accordance with N.J.A.C. 10A:8-1.1 through 10A:8-3.6, an Inmate Handbook, which outlines a formal procedure for dealing with inmate grievances.  The Handbook details the Inmate Grievance and Tracking Program, which is a

---

[1]Plaintiff's job change also included a decrease in pay from $3.00 per day as a paralegal to $1.30 per day for work in grounds maintenance.

2

four-step process designed "to provide a direct and confidential route for inmates to make the administration aware of their problems and concerns."  (Affidavit of Donna Tymkow at ¶ 3.)  In order to successfully submit a complaint to the administration, the inmate must fill out: (1) an Inmate Request Form, (2) an Interview Request Form, (3) an Administrative Remedy Form, and (4) an Administrative Remedy Form-Appeal.  (Tymkow Affidavit, Ex. A. at 96.)  All of the above mentioned forms can be obtained from a housing unit officer, a social worker, or the law library.  (Tymkow Affidavit at ¶ 8.)  In order to accurately complete the forms, the following specifications must be adhered to:

> one concern per form; writing must be legible
> and the concern must be specific; each form
> must be firmly written in ink to go through
> all the copies; the inmate must use the space
> provided but may attach supporting documents;
> the inmate submitting the form is the only
> person who may prepare the form, however a
> social worker may assist an inmate if
> necessary; follow-up questions must contain
> the case number of the original request.

(Id. at ¶ 10.)  Once completed, the forms must be placed in the appropriate drop boxes, which can be found in each housing unit, otherwise they will not be processed.  (Id. at ¶¶ 9, 11.)  The Inmate Grievance Coordinator then gathers all forms and assigns a case number to each before forwarding them to the appropriate department for response.  (Id. at ¶¶ 12-13.)  If an inmate does not complete his form or files an incorrect form, it will be marked as "invalid" and returned to the prisoner with a Staff

Corrective Action Form, which includes directions on how to correct the complaint. (Id. at ¶¶ 14-15; Tymkow Affidavit, Ex. B.) The forms that are returned to an inmate for any of the reasons listed on the Staff Corrective Action form are undocumented forms and SWSP does not keep a record of them having been submitted. (Tymkow Affidavit at ¶ 15.)

From March 13, 2002 through July 19, 2004, Plaintiff filed fifteen (15) Inmate Request Forms properly, three of which relate to this litigation. (Tymkow Affidavit, Ex. C.) On May 16, 2003, Plaintiff submitted an Inmate Request Form addressed to Donna Tymkow, the Inmate Grievance Coordinator, regarding allegations that he had been prevented from communicating directly with medical personnel. Plaintiff alleged specifically that he addressed an Inmate Request Form to Jeannie Long with respect to obtaining a special diet for patients with Hepatitis C. Plaintiff alleged that the Inmate Request Form was returned to him with an explanation indicating that he must submit a Health Services Form to address medical concerns. Plaintiff further maintained that he was responding to a correspondence by Jeannie Long. The Inmate Request Form was received on May 19, 2003 and assigned Case No. 03-05-0678. Ms. Tymkow advised Plaintiff that a special medical diet cannot be requested via an Inmate Request Form and directed him to be seen by prison medical staff. (Id.)

4

In addition, Plaintiff submitted an Inmate Request Form dated January 5, 2004 addressed to Jeannie Long regarding blood tests authorized by Dr. Delatorre for treatment of Hepatitis C. The Inmate Request Form was received on January 12, 2004, assigned Case No. 04-01-0184, and forwarded to the Medical Department on January 7, 2004. The Medical Department provided a response on February 4, 2004. (Id.)

Finally, Plaintiff submitted an Inmate Request Form dated March 29, 2004, in which he alleges that he was transferred to a different housing unit in retaliation for complaining about the Department of Corrections ("DOC") mail policy and for making a verbal complaint to an officer regarding a delay in opening the door to the law library. The Inmate Request Form was received on March 30, 2004 and assigned Case No. 04-03-1496. The form was then forwarded to the Administrator on March 31, 2004 and the Administrator provided a response on April 27, 2004, specifically indicating that only the Administrator, Special Investigations Division and the Chief of Custody have the authority to move an inmate from one housing unit to another. (Id.)

In addition to the Inmate Request Forms he submitted, Plaintiff also submitted an Administrative Remedy Form dated March 15, 2004 regarding the DOC mail policy. The Administrative Remedy Form was received on March 16, 2004, assigned Case No. 04-

5

03-0022, and forwarded to the Administrator, who provided a response on March 31, 2004.  (Tymkow Affidavit at Ex. D.)

On August 11, 2004, Plaintiff filed a three-count Complaint against Defendants in this Court alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983.  Plaintiff's first count alleges that the New Jersey Department of Corrections has implemented a policy in which the staff opens and censors the prisoners' mail outside of the presence of the prisoners.  (See Compl. at 7-7a.)  Plaintiff contends that this policy constitutes a violation of his First Amendment right to freedom of speech and interferes with his right of access to the courts.  (Id. at 7.)  Plaintiff's second claim alleges that SWSP employs inadequate grievance procedures which infringe upon his right to privacy of medical information and his access to courts.  (Id. at 7b).  Specifically, Plaintiff contends that SWSP's procedures resulted in the dissemination of Plaintiff's confidential medical condition to non-medical staff and that SWSP's Grievance Coordinator has hindered Plaintiff's ability to pursue claims that he asserts are meritorious.  (See id. at 7b-7c.)  Plaintiff's third claim alleges that he has been subject to retaliation for the exercise of his First Amendment rights.  (Id. at 7d.)

On December 22, 2004, Defendants filed a motion to stay the proceedings in light of two cases which challenge the

constitutionality of the Department of Corrections' policy of opening mail that are currently on appeal before the Third Circuit.  (See Ronald Jones v. M. Brown, et al., Docket No. 03-3823, and Jamaal W. Allah, et al. v. Governor of New Jersey, Docket No. 04-4426.)  On January 20, 2005, the Honorable Ann Marie Donio, United States Magistrate Judge, granted Defendants' motion in part, finding that a stay was appropriate only as to Count One of Plaintiff's Complaint.

On March 15, 2004, Defendants filed the instant motion to dismiss Counts Two and Three of Plaintiff's Complaint or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.  DISCUSSION

A.  Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox,

Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Where, however, matters outside the pleadings are referred to by the parties in addressing the motion, as in the present case, Rule 12(b) also provides that the motion may be converted to a motion for summary judgment and decided under Rule 56, Fed. R. Civ. P.

Under the well-established standards for summary judgment, summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

B.  Supervisory Liability

Supervisory liability in suits brought pursuant to 42 U.S.C. § 1983 runs against the individual and is based on his or her personal responsibility for the alleged constitutional violation. "[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates."  Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987).  See also Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).  A supervisor cannot be held liable under § 1983 on the basis of respondeat superior.  Monell v. Department of Soc. Servs., 436 U.S. 658, 694 n.58 (1978).  While a supervisory official may be liable even where not directly involved in the constitutional violation, at the very least, the

9

misconduct must be "affirmatively link[ed]" to the action or inaction of the supervisor.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).

The Third Circuit Court of Appeals has articulated a standard for establishing supervisory liability which requires "actual knowledge and acquiescence."  Baker v. Monroe Township, 50 F.3d 1186, 1194 & n.5 (3d Cir. 1995).  See also Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) ("Supervisory liability can be shown in two ways, "either 'through allegations of personal direction or of actual knowledge and acquiescence.'")  Moreover, the United States Supreme Court held in Board of County Commissioners v. Brown, 520 U.S. 397 (1997), that, in order to sustain a cognizable § 1983 claim, the plaintiff must do more than merely identify conduct attributable to the defendant.  The plaintiff must instead show that the defendant, through his deliberate conduct, was the "moving force" behind the alleged injury.  In other words, the plaintiff must establish that the defendant's action "was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [defendant's] action and the deprivation of federal rights."  Id. at 397.

Here, Plaintiff's Complaint does not allege facts that relate to specific actions by Defendants Commissioner Brown or Administrator MacFarland.  In fact, Plaintiff fails to mention

10

Commissioner Brown in Counts II and III of the Complaint. Moreover, other than alleging that Administrator MacFarland is responsible for "direct supervision" of the grievance procedure at SWSP, Plaintiff makes no specific allegations against her in Count II of his Complaint, which asserts that the grievance procedure resulted in the dissemination of private medical information and claims that his transfer was in retaliation for his filing various grievances. (Compl. at ¶ 17.) In Count III of the Complaint, Plaintiff refers to Administrator MacFarland but alleges only that her liability is the result of her "supervisory role." (Compl. at ¶ 44.) Plaintiff has not alleged that Defendants Brown or MacFarland had any direct participation in the alleged retaliation by corrections officers. It appears that Plaintiff bases Commissioner Brown and Administrator MacFarland's alleged liability solely on their respective job titles, rather than any specific action alleged to have been taken by them adverse to Plaintiff. In light of Plaintiff's failure to plead specific instances of fault or involvement by these Defendants, Plaintiff's claims in Counts II and III against Defendants Commissioner Brown and Administrator MacFarland must be dismissed.

C.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA") provides, among other things, that "no action shall be brought with respect

11

to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore, exhaustion of all administrative remedies is mandatory whether or not the inmate believes such administrative remedies to be effective and even if the available administrative processes cannot grant the desired remedy.  Booth v. Churner, 532 U.S. 731, 739-41 (2001).  Moreover, in Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002), the Third Circuit held that the PLRA's exhaustion requirement applies to grievance procedures set forth in a New Jersey Department of Correction's inmate handbook, even if that handbook is not formally adopted by a state administrative agency.

    Here, in accordance with N.J.A.C. 10A:8-1.1 to 10A:8-3.6, SWSP has adopted an Inmate Handbook which sets forth the rights and privileges of its inmates.  In addition, the Handbook also sets forth "Inmate Grievance and Tracking Program" procedures which have been established to provide a direct and confidential route for inmates to make the prison administration aware of

12

their problems and concerns. (Tymkow Affidavit, Ex. A.) Plaintiff is clearly aware of the four-step grievance procedure in place at SWSP, as he sets forth in his Complaint. (Compl. at ¶ 17.)

The record reflects that Plaintiff submitted one Inmate Request Form dated May 16, 2003, addressed to Inmate Grievance Coordinator Donna Tymkow, regarding allegations that he has been prevented from communicating directly with prison medical staff. Specifically, Plaintiff alleged that he had previously addressed an Inmate Request Form to Jeannie Long with respect to his desire to obtain a special diet for patients with Hepatitis C. Plaintiff alleges that the Inmate Request Form was returned to him with an explanation indicating that he must submit a Health Services Form to address medical concerns. After this Inmate Request Form was received on May 19, 2003 and assigned Case No. 03-05-0678, Plaintiff was informed that he could not request a special medical diet on an Inmate Request Form. Thereafter, Plaintiff failed to complete an Administrative Remedy Form or attempt to continue with the four-step grievance procedure as set forth in the Inmate Handbook.

Moreover, Plaintiff's May 16, 2003 Inmate Request Form is the only form submitted regarding any issue related to his Hepatitis C diagnosis. Plaintiff never submitted a grievance form complaining about the grievance system with regard to any

13

problem related to the alleged dissemination of information regarding his medical condition. Plaintiff has therefore failed to exhaust his administrative remedies with respect to this second claim, which will therefore be dismissed as to all Defendants.

Plaintiff also maintains that he was retaliated against by being transferred to a different housing unit within SWSP and by having his prison job changed due to his filing of Inmate Request Forms. Plaintiff submitted one Inmate Request Form dated March 29, 2004 in which he alleges that he was transferred to a different housing unit in retaliation for complaining about the DOC mail policy and for making a verbal complaint to an officer regarding a delay in opening the door to the law library. The Inmate Request Form was received on March 30, 2004 and assigned Case No. 04-03-1496. It was then forwarded to the Administrator on March 31, 2004 and the Administrator provided a response on April 27, 2004, indicating that only the Administrator of the Special Investigations Division and the Chief of Custody have the authority to move an inmate from one housing unit to another. (Tymkow Affidavit at Ex. C.) Thereafter, Plaintiff apparently did not complete an Administrative Remedy Form or attempt to continue with the four-step grievance procedure as set forth in the Inmate Handbook.

Plaintiff nevertheless now complains that he was retaliated against due to his alleged filing of grievances by experiencing a change in his housing unit and job assignment.  Plaintiff, however, has never exhausted his administrative remedies with respect to this third claim and is thus barred from proceeding at this time on that claim.

### III.  CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss or, in the alternative, for summary judgment, must be granted.  As to Defendants Devon Brown and Kathryn MacFarland, Plaintiff has not plead specific instances of fault or involvement to maintain claims against them.  As to the remaining Defendants, Plaintiff has not satisfied the requirement of administrative exhaustion.  Therefore, Counts II and III of Plaintiff's Complaint will be dismissed and the remainder of Plaintiff's Complaint (i.e., Count I) will be administratively terminated without prejudice to Plaintiff's right to reopen this case and proceed on that sole remaining count after the Third Circuit Court of Appeals issues its decisions in Ronald Jones v. M. Brown, et al., Docket No. 03-3823, and Jamaal W. Allah, et al. v. Governor of New Jersey, Docket No. 04-4426.

**August 24, 2005**                             **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge