```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBERTO SALVADOR,                    Plaintiff,         v.    DEVON BROWN, et al.,                    Defendants. | HON. JEROME B. SIMANDLE   Civil Action No. 04-3908 (JBS)   **OPINION** |

APPEARANCES:

Mr. Roberto Salvador
#401971
East Jersey State Prison
Unit 4DN
Lock Bag R
Rahway, NJ 07065
    Plaintiff pro se

Christopher C. Josephson, Esq.
Office of the NJ Attorney General
RJ Hughes Justice Complex
25 Market Street
PO Box 112
Trenton, NJ 08625-0112
    Attorney for Defendants

**SIMANDLE**, District Judge:

    Plaintiff Roberto Salvador, proceeding pro se, is an inmate who is presently incarcerated in East Jersey State Prison ("EJSP") in Rahway, New Jersey, and who was previously incarcerated at South Woods State Prison ("SWSP") in Bridgeton, New Jersey.  He filed this action against multiple defendants, alleging, inter alia, that the policy of the New Jersey Department of Corrections ("NJDOC") of opening an inmate's legal

mail outside of his presence violated his rights under the First Amendment.  On January 20, 2005, the Court stayed all proceedings on Plaintiff's First Amendment claim pending the decision of the Court of Appeals for the Third Circuit in Jones v. Brown, 461 F.3d 353 (3d Cir. 2006), a consolidated appeal that addressed the constitutionality of the policy at issue in this suit.  In Jones, the Court of Appeals ultimately found the NJDOC's legal mail policy unconstitutional and upheld a district court order enjoining officials from enforcing the policy.

The parties have since filed cross-motions for summary judgment [Docket Items 48 and 50].  For the reasons explained below, the Court finds that the defendants are entitled to qualified immunity on Plaintiff's First Amendment claim, and that Plaintiff's claim for declaratory relief is moot.  The Court will thus deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary judgment.

**I.    BACKGROUND**

Plaintiff, an inmate at EJSP, filed this action pursuant to 42 U.S.C. § 1983 on August 16, 2004, alleging that while he was previously incarcerated at SWSP, various NJDOC employees committed a range of activities that violated his constitutional rights.  Specifically, Plaintiff's three-count Complaint alleges that Defendants Brown and MacFarland violated his First Amendment rights by instituting and enforcing an NJDOC policy of opening,

2

screening, and censoring inmates' legal mail outside of the inmates' presence (Count One)[1]; that SWSP employed inadequate grievance procedures, resulting in an impingement upon Plaintiff's access to courts (Count Two); and that Plaintiff was retaliated against for having exercised his First Amendment rights (Count Three).

On December 22, 2004, Defendants moved to stay the proceedings in this matter pending the decision by the Court of Appeals in Jones.  On January 20, 2005, the Honorable Ann Marie Donio, United States Magistrate Judge, entered an Order granting Defendants' motion in part, finding that a stay was appropriate only as to Count One of the Complaint.

Defendants subsequently filed a motion to dismiss and/or for summary judgment as to Counts Two and Three.  In its August 24, 2005 Opinion and Order, the Court granted Defendants' motion. The Court found that Defendants Brown and MacFarland were entitled to dismissal of the claims asserted in Counts Two and Three because Plaintiff failed to plead facts suggesting the fault or involvement by either Defendant in the conduct underlying those claims, and that Plaintiff failed to exhaust his administrative remedies as to Counts Two and Three, as is

---

[1] In particular, Plaintiff alleges that between July 2002 and August 2004, Plaintiff's legal mail was opened outside of his presence on at least thirty-seven occasions.  (Pl.'s Statement of Undisputed Material Facts ¶ 2.)  Defendants do not appear to dispute the veracity of this allegation.

required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Additionally, in its August 24, 2005 Order, the Court administratively terminated this action without prejudice to Plaintiff's right to reopen the case and proceed on Count One following the decision of the Court of Appeals in Jones.

On August 24, 2006, the Court of Appeals issued its decision in Jones. As in this case, the issue in Jones was whether the NJDOC's policy of opening inmates' legal mail outside of their presence violated the inmates' rights under the First Amendment. Jones, 461 F.3d at 355-56. As the Court of Appeals explained, the NJDOC adopted the policy as a security measure in 2001 after letters containing anthrax were mailed through the United States postal system. Id. at 356. The court affirmed the order of the district court in Allah v. Brown, 351 F. Supp. 2d 278 (D.N.J. 2004), enjoining the enforcement of the mail inspection policy:

> We believe that a prison administrator compelled to act immediately after September 11th and October of 2001 might reasonably have concluded that the risk of an anthrax terrorism attack on a prison was sufficiently unquantifiable to justify a temporary, emergency measure involving the opening of a prisoner's legal mail in his absence. We conclude, however, that we should review the injunction entered by the District Court in Allah based on the state of the record in that case at the time it was entered more than three years after September 11th . . . Reviewing it from that perspective we . . . find that there is no reasonable connection between the Legal Mail Policy and the defendants' asserted interest.

Jones, 461 F.3d at 362-63. The court further held that the state employees who implemented the policy were entitled to qualified

immunity because reasonable prison administrators in their position would not have known that their conduct violated the First Amendment prior to the court's decision in Jones.  Id. at 365.

On October 16, 2006, after the Court of Appeals rendered its decision in Jones, Plaintiff filed a motion to reopen this docket, which the Court granted.  The parties subsequently filed the cross-motions for summary judgment presently before the Court.

**II. DISCUSSION**

**A.   Standard of Review**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be

believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). It there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. Weissman v. United States Postal Serv., 19 F. Supp. 2d 254, 259 (D.N.J. 1998). When ruling on cross-motions for summary judgment, the court must consider the motions independently, Williams v. Philadelphia House Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.   Qualified Immunity**

Defendants argue that they are entitled to qualified immunity from Plaintiff's First Amendment claim in Count One of the Complaint, because a reasonable prison administrator in their position would not have known that instituting and enforcing the

NJDOC's legal mail policy was unconstitutional prior to Jones. Plaintiff "does not dispute defendants' claim of qualified immunity based on the holding of the Third Circuit in Jones v. Brown . . ." (Pl.'s Opp'n Br. 4.)  For the following reasons, the Court agrees with the parties that Defendants are entitled to qualified immunity from Plaintiff's remaining claim against them.

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the defendant officer was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing an officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).  Courts employ a two-step inquiry in determining whether a governmental officer is entitled to qualified immunity. First, the Court must address whether "the officer's conduct violated a constitutional right."[2]  Saucier v. Katz, 533 U.S. 194, 201 (2001).

"If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the

---

[2] As Defendants acknowledge, Jones makes clear that by enforcing NJDOC's legal mail policy, Defendants violated Plaintiff's First Amendment rights.  See Jones, 461 F.3d at 362-63.

officer from liability." Curley, 499 F.3d at 207 (quoting Scott v. Harris, --- U.S. ----, 127 S. Ct. 1769, 1774 (2007)). The inquiry under this second step addresses whether "the right was clearly established." Saucier, 533 U.S. at 201. The analysis of whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition," in order to assess "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02.

As Defendants argue and Plaintiff concedes, in Jones, the Court of Appeals made clear that prison officials enforcing NJDOC's prison mail policy prior to Jones were entitled to qualified immunity. Jones, 461 F.3d at 365. This is the case because the right Defendants are alleged to have violated was not clearly established when the violations Plaintiff complains of allegedly took place. See Saucier, 533 U.S. at 201. While the Court of Appeals had previously held in Bieregu v. Reno, 59 F.3d 1445 (3d Cir. 1995), that prisoners, as a result of their incarceration, "do not forfeit their First Amendment right to use of the mails," and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech," 59 F.3d at 1452, the court recognized in Jones that the vitality of Bieregu's First Amendment holding had been called

into doubt by subsequent cases:

> we believe a reasonable prison administrator evaluating whether the legal mail policy should be continued might well have concluded that Bieregu was no longer sound law . . . [W]e had declared without reservation in Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997), that the Supreme Court had "effectively overruled Bieregu." While we here hold that this was not true with respect to the First Amendment aspects of Bieregu, in the absence of authority suggesting otherwise, we cannot find a prison administrator to have been unreasonable in taking our statement in Oliver at face value.

Jones, 461 F.3d at 364-65.

Defendants fall squarely within the scope of Jones' qualified immunity holding. Based on the doubt that Oliver had cast upon Bieregu's teachings regarding the propriety of opening inmates' legal mail outside of their presence, it would not be clear to a reasonable prison administrator in Defendants' position that implementing NJDOC's legal mail policy prior to Jones would run afoul of inmates' First Amendment rights. Id.; see also Saucier, 533 U.S. at 201-02. The Court thus agrees with the parties that under Jones, Defendants are entitled to qualified immunity from Plaintiff's remaining claim in Count One of the Complaint.

### C. Mootness

While Plaintiff concedes that, in light of Jones, Defendants are entitled to qualified immunity, he argues that his First Amendment claim is not rendered moot by Defendants' immunity from monetary damages because in addition to a damages award,

9

Plaintiff seeks declaratory relief from this Court against the enforcement of the legal mail policy.  Although he admits that under <u>Jones</u> the NJDOC is enjoined from enforcing the legal mail policy at issue in Plaintiff's Complaint, and that the NJDOC has in fact abandoned the policy in question, Plaintiff argues that he is entitled to declaratory relief because "it cannot be said with assurance that there is no reasonable expectation that the DOC will reinstate its legal mail policy . . ."  (Pl.'s Opp'n Br. 4.)

The Court finds that Plaintiff's First Amendment claim is moot and will accordingly deny Plaintiff's motion for summary judgment.  It is axiomatic that federal courts are empowered to adjudicate only actual cases and controversies.  <u>See</u>, <u>e.g.</u>, <u>Nextel Partners Inc. v. Kingston Tp.</u>, 286 F.3d 687, 693 (3d Cir. 2002) ("Under Article III, section 2 of the U.S. Constitution, federal judicial power extends only to cases and controversies.").  Likewise, under the Declaratory Judgments Act, the capacity of this Court to "declare the rights and other legal relations of any interested party" is conditioned upon the existence of "a case of actual controversy."  28 U.S.C. § 2201(a).  As the Court of Appeals has explained, "litigants will not satisfy the 'actual controversy' requirement when their dispute becomes moot prior to judicial resolution."  <u>Korvettes, Inc. v. Brous</u>, 617 F.2d 1021, 1023-24 (3d Cir. 1980); <u>see</u> <u>also</u>

10

Nextel, 286 F.3d at 693 ("If a claim no longer presents a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it.").

Because the NJDOC policy that was the subject of Plaintiff's remaining claim was discontinued after the district court enjoined its enforcement in Allah and the Court of Appeals affirmed the district court's order in Jones, Plaintiff's claim no longer presents a live case or controversy and is moot. "Simply put, a declaration of unconstitutionality or injunction directed against the objectionable features of the [discontinued legal mail policy] would serve no purpose today." Khodara Environmental, Inc. ex rel. Eagle Environmental L.P. v. Beckman, 237 F.3d 186, 194 (3d Cir. 2001). While the Court recognizes that a defendant's voluntary abandonment of illegal conduct does not deprive it of jurisdiction to grant injunctive or declaratory relief, United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953), the NJDOC did not voluntarily discontinue the policy Plaintiff challenges. Rather, the NJDOC was legally obligated by Allah and Jones to cease inspecting inmates' legal mail outside the inmates' presence in order to render its legal mail policy constitutional. Plaintiff's speculation that the NJDOC might someday flout its legal obligations and reinstate the unconstitutional policy is not supported by any evidence in the record and does not provide this Court a basis to grant the

11

relief Plaintiff seeks.  In short, there no longer exists in this case a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974).

Finding that the claim contained in Count One of Plaintiff's Complaint is moot, the Court will deny Plaintiff's request for declaratory relief.

**D.   Costs**

Finally, the Court rejects Plaintiff's claim that he is the prevailing party in this matter and is, as such, entitled to have Defendants pay the costs of this litigation.  Under Rule 54(d), F. R. Civ. P., "costs – other than attorney's fees – should be allowed to the prevailing party."  In this Circuit, "the test for prevailing party status under Rule 54(d) [is] the same as the test for prevailing party status under 42 U.S.C. § 1988." Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897, 926 (3d Cir. 1985).  The test for determining prevailing party status under both Rule 54(d) and § 1988 is twofold.  The Court must determine, first, "whether plaintiff achieved some of the benefit sought by the party bringing the suit," and, second, "whether the litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief."  Metropolitan Pittsburgh Crusade for Voters v. City of Pittsburgh, 964 F.2d

244, 250 (3d Cir. 1992) (internal quotations and citations omitted).

Plaintiff cannot satisfy the causation prong of this inquiry, and is thus not entitled to the costs he has expended in having pursued this litigation. While the Court recognizes that "a district court must apply the most expansive definition of causation" in determining whether a plaintiff's lawsuit materially contributed to achieving a litigant's relief, <u>id.</u> (citation omitted), there nonetheless "must be some causal relationship between the lawsuit and the ultimate relief." <u>Hughes v. Lipscher</u>, 852 F. Supp. 293, 303 (D.N.J. 1994). No such relationship exists here. The relief Plaintiff sought in Count One of the Complaint – the discontinuation of the NJDOC's legal mail policy – was achieved not through any of Plaintiff's efforts, but as a result of earlier lawsuits pursued by different litigants. There is no relationship between the success of those litigants' claims and Plaintiff's separate, later-filed lawsuit. Because Plaintiff's litigation did not "constitute[] a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief," <u>Metropolitan Pittsburgh Crusade for Voters</u>, 964 F.2d at 250 (citation omitted), Plaintiff was not a prevailing party in this lawsuit. The Court thus will deny Plaintiff's request for an award of costs.

**III. CONCLUSION**

     For the reasons discussed above, the Court will deny Plaintiff's motion for summary judgment and will grant Defendants' cross-motion for summary judgment.  The accompanying Order will be entered.


**April 8, 2008**                      **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                    United States District Judge